**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua Govan,<br><br>          Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br><br>          Defendant. | No. CV-17-00422-TUC-LCK<br><br>**ORDER** |

      Plaintiff Joshua Govan filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Govan's Opening Brief, Defendant's Responsive Brief, and Govan's Reply. (Docs. 19-21.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 18.) Based on the pleadings and the administrative record submitted to the Court, the decision of the Commissioner is affirmed.

**PROCEDURAL HISTORY**

      Govan filed an application for adult child's Disability Insurance Benefits (DIB) in January 2013. (Administrative Record (AR) 203.) He alleged disability from May 5, 1994 (*id.*), amended to May 5, 2012 (his 18th birthday), at his hearing. (AR 13, 37.) Govan's application was denied upon initial review (AR 57-86) and on reconsideration (AR 87-114). A hearing was held on October 23, 2015. (AR 30-56.) Subsequently, the ALJ found that Govan was not disabled. (AR 13-24). The Appeals Council denied Govan's request to review the ALJ's decision. (AR 1.)

## FACTUAL HISTORY

Govan was born on May 5, 1994, making him 18 years of age at the onset date of his alleged disability. (AR 203.) Govan has never done substantial gainful activity.

The ALJ found that Govan had the severe impairments of borderline intellectual functioning and attention deficit hyperactivity disorder. (AR 16.) The ALJ determined Govan did not have a listed impairment. (AR 16-19.) The ALJ found Govan had the RFC to perform light work but could only occasionally climb ladders and must avoid hazards; perform simple tasks, with simple instructions; and work primarily with things, having only occasional contact with others. The ALJ concluded that Govan could maintain concentration, persistence, and pace for two-hour periods without a break. (AR 19.) Relying on the testimony of a vocational expert, the ALJ found at Step Five that Govan could perform work that exists in significant numbers, such as cleaner/housekeeper, cafeteria attendant, and advertising distributor. (AR 24.)

## STANDARD OF REVIEW

A claimant may receive disabled child insurance benefits if he is older than 18 and his disability began before age 22. 20 C.F.R. § 404.350(a)(5). The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Govan argues the ALJ committed three errors: (1) he failed to find that Govan met Listing 12.05(C); (2) he failed to include all of Govan's limitations in the RFC; and (3) he failed to properly weigh opinion evidence. Govan requests a remand for the award of benefits.

**Listing 12.05C**

Govan argues that the ALJ failed to consider whether he met the requirements of Listing 12.05C and, if he had done so, he would have found that he did meet this listing.

Listing 12.05C requires: "A valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Additionally, all subsets of Listing 12.05 are based on "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Defendant concedes that Govan met the specific criteria of subsection C, because he had a full-scale IQ of 70 and a second severe impairment of ADHD. (Doc. 20 at 4.) However, the ALJ concluded that Govan did not meet any subpart of Listing 12.05 due to an "absence of deficits in adaptive functioning in the domains of conceptual, social, and practical functioning" prior to age 22.[1] (AR 19.)

At the time of the ALJ's decision, "deficits in adaptive functioning" was not defined in the regulations. In looking at intellectual disabilities as relevant to capital punishment, the Supreme Court offered the following description, "the inability to learn basic skills and adjust behavior to changing circumstances." *Hall v. Florida*, 572 U.S. 701, 710 (2014). The Court also noted that adaptive functioning covered the areas of "communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work." *Atkins v. Virginia*, 536 U.S. 304, 310 n.3 (2002). Citing DSM-IV, the Seventh Circuit defined deficits in adaptive functioning as an "inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007).

Govan has not demonstrated that the ALJ's finding regarding Listing 12.05C was legal error or not supported by substantial evidence. Govan relies solely upon the ALJ's finding that he had moderate limitations in activities of daily living, social functioning, and concentration, persistence and pace. Under Govan's logic, even the mildest of limitations in any of these areas would qualify as "deficits in adaptive functioning." That

---

[1] The onset age of Govan's deficits is not at issue, as he was only 21 at the time of the ALJ's decision.

would be contrary to the purpose of the Listings, which is to award benefits when a claimant demonstrates an impairment so severe that it prevents all persons meeting the criteria from doing "any gainful activity." 20 C.F.R. § 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Govan's argument also is counter to the Supreme Court and the Seventh Circuit's definition of "deficits in adaptive functioning" as an "inability" to learn basic skills, adapt, and to cope with daily living.

Govan has not established an inability to manage daily life. Dr. Marks, upon whose opinion Govan otherwise relies, found that Govan could learn new information and adapt to change. (AR 383.) As required, the ALJ evaluated Govan's daily activities, concentration and social abilities, and his conceptual and practical functioning. (AR 17-19.) The ALJ observed that Govan graduated high school (participating in special education classes), independently rode the bus to work at a hospital through a school placement, performed household chores, and accessed the internet on a computer. (AR 18-19.) The ALJ noted that Govan scored 26/30 on the Mini Mental Status Exam. (AR 19.) In making his finding, the ALJ also relied on Govan's "ability to adequately perform self-care activities and engage in hobbies including reading, playing video games on a tablet, text messaging on his phone, watching football games and evaluating game details and player statistics, ride his bike, and socialize with a friend." (*Id.*) Further, reviewing psychologists, Randall Garland, Ph.D., and Andres Kern, Ph.D., found that Govan did not meet any portion of Listing 12.05. (AR 78-79, 95.) The record contains no other medical opinion on whether Govan met a Listing.

Although there is evidence to support Govan's argument that he has deficits in adaptive functioning, including his placement in special education, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Here, the ALJ cited sufficient record evidence of Govan's abilities to support his finding that

Govan did not have deficits in adaptive functioning that satisfied the criteria for Listing 12.05C (AR 18-19). *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). For that reason, the Court will not disrupt the ALJ's determination.

**Residual Functional Capacity**

Govan argues that the ALJ's RFC finding failed to account for his moderate limitations in concentration, persistence, and pace. He contends that the RFC limiting him to simple, routine tasks but providing that he could maintain concentration, persistence and pace for two-hour periods was contrary to his limitations.

Drs. Garland and Kerns determined that Govan was moderately limited in his ability to maintain attention and concentration. (AR 83, 97.) Further, Dr. Kerns concluded that Govan was moderately limited in his ability to perform at a consistent pace without extra breaks; Dr. Garland found no significant limitation in that area. (AR 97.) However, they both opined that Govan could maintain sufficient attention for routine tasks and had the ability to perform unskilled work requiring minimal social contact. (AR 84, 97-98, 99.)

At Step Three, the ALJ adopted Drs. Garland's and Kern's conclusion that Govan had a moderate limitation in concentration, persistence and pace. (AR 17.) The RFC further reflected their opinion that Govan had enough concentration for simple tasks with simple instructions limited to occasional contact with others. (AR 19.) Further, the RFC provided that Govan could maintain concentration for two hours at a time. (*Id.*) This finding was consistent with the psychologists' opinion that Govan could perform competitive work. As confirmed by the vocational expert, if a person cannot maintain concentration for two-hour periods on routine tasks, he is not employable. (AR 55.)

Defendant argues that the RFC was sufficient and conformed to the medical opinion evidence. In support of that argument, the Commissioner relies upon *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). In that case, two doctors identified that the claimant had limitations in pace. *Id.* at 1173. One of the doctors concluded that, despite that limitation, the claimant retained the ability to do simple tasks. *Id.* The Ninth Circuit found it was proper for the ALJ to restrict the claimant to simple, routine work because that was the only concrete restriction offered by a doctor. *Id.* at 1174, 1175 (finding that the ALJ explained his decision to omit the claimant's pace deficiencies by referencing the doctor's opinion).

Govan's case is analogous to *Stubbs-Danielson*. The doctors upon which the ALJ relied found that, despite Govan's limitations in concentration, persistence and pace, he could perform simple tasks at a competitive level. Thus, the ALJ's conclusions were consistent with the medical opinions upon which he relied. Govan argues that *Stubbs-Danielson* does not control because that case involved only a pace limitation and, here, the claimant has limitations in concentration, persistence and pace. That distinction is not decisive. The critical issue is whether the ALJ's decision was consistent with the medical opinion evidence. Which it was. Drs. Kern and Garland concluded that despite limitations in concentration, persistence and pace, Govan could perform unskilled simple tasks with the only necessary accommodation being limited social contact.[2]

The out-of-circuit and unpublished opinions cited by Govan cannot override the controlling holding of *Stubbs-Danielson*. Further, they are not directly analogous. For example, in *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 711-12 (9th Cir. 2013), the ALJ improperly rejected uncontradicted medical opinions that the claimant could not work due to limitations in concentration, persistence and pace. Thus, in *Lubin*, the ALJ's failure to include in the RFC moderate limitations in concentration, persistence

---

[2] Examining physician Dr. Marks also found that Govan could concentrate sufficiently to perform routine tasks, although he believed he would need structure and "a high level of cuing" (AR 383), a limitation not found by Drs. Kerns and Garland and not adopted by the ALJ.

and pace was inconsistent with the medical opinion evidence. *Id.* at 712; *see also Lara v. Colvin*, No. CV13-01643-PHX-JZB, 2015 WL 1505817, *9 (D. Ariz. Mar. 31, 2015) (finding error because ALJ failed to reconcile medical opinion evidence of limitations in concentration, persistence, and pace with RFC). In *Brink v. Comm'r of Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009), the court reversed because the ALJ found a claimant with a moderate limitation in concentration, persistence or pace could perform assembly-line work, despite the vocational expert's testimony that such a limitation precluded that work. *See also Perkins v. Colvin*, No. CV-13-01817-PHX-BSB, 2014 WL 4425785, *13-14 (D. Ariz. Sept. 9, 2014) (relying on *Brink* to find error in RFC that did not include medical opinion of moderate limitation in concentration, persistence and pace). The critical distinction between Govan's facts and those set forth in *Brink* and *Perkins* is that, here, the doctors concluded that Govan's limitations did not prevent him from performing simple unskilled work at a competitive level. In the cases relied upon by Plaintiff, there is no evidence that the medical opinions addressed the impact of moderate limitations in concentration, persistence or pace on the claimant's RFC. Under the facts of this case – where the RFC was supported by medical opinion evidence and the hypothetical included all the limitations in the RFC – *Stubbs-Danielson* dictates that the Court uphold the ALJ's decision.

**Medical Opinions**

Govan argues the ALJ failed to give proper weight to the opinion of Dr. Marks. In evaluating Govan's social interaction, Dr. Marks opined that "[a] combination of lower level of intellectual functioning as well as his stuttering suggests that this claimant would likely do much better in either a sheltered-type environment or an environment in which there is a high level of support for his level of functioning." (AR 383.) The ALJ gave little weight to this portion of Dr. Marks's opinion because stuttering was not reflected elsewhere in the record and "the claimant's personal demeanor at the hearing was well composed, his manner of speaking well-modulated with appropriate and articulate

speech, and his testimony thoughtful, responsive, detailed, and appropriate without apparent stuttering or impairment in focus, attention, or understanding." (AR 22.)

The opinion of an examining physician generally is afforded more weight than a non-examining or reviewing physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Here, the opinion of Dr. Marks was contradicted by Drs. Kerns and Garland, who determined that Govan did not require a sheltered work environment but could sustain competitive employment. (AR 70-72, 84-85.) When there are contradictory medical opinions, to reject a treating or examining physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Other than the observation by Dr. Marks, Govan does not point to any record evidence of stuttering and no stuttering was present at the hearing. Because the record did not substantiate stuttering as a recurrent problem for Govan, the ALJ's rejection of Dr. Marks's stuttering finding was legitimate. However, the ALJ restricted Govan to employment with only occasional social contact to accommodate possible stuttering or other limitations.

Although Govan does have a lower level of intellectual functioning, as relied on by Dr. Marks, two other doctors determined he did not require a sheltered work environment. Govan relies on a January 2012 record note from his primary care physician: "[d]iscussed with Grandmother the importance of meeting with teachers in regard to length of time in high school and potential tech schools v. sheltered type work situations after school." (AR 301.) This note does not amount to a medical opinion that Govan needed a sheltered work environment. It was merely advice to Govan's parent to explore the options. When his grandmother subsequently met with school officials in April 2012, the record stated that Govan would need vocational services after high school, but the goal was "successful competitive employment." (AR 314.) Those same records indicate that he worked in a school-based business and was "able to multi task on occasions when he [was] responsible for popcorn production on his own, and [did] a

- 9 -

great job. He [was] able to work independently in a mature manner to complete a task." (*Id.*) One of Govan's goals for his final year of school was to demonstrate employability. (AR 321.)

Govan's school records, the opinions of Drs. Kerns and Garland, and the ALJ's observations at the hearing provide substantial evidence to support the ALJ's finding that Govan did not need a sheltered work environment. *See Valentine*, 574 F.3d at 690 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). For that reason, the ALJ did not err in rejecting that portion of Dr. Marks's opinion.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court concludes the ALJ did not err as to any of the claims raised by Plaintiff. Therefore, Plaintiff is not entitled to relief and the appeal is denied.

Accordingly, **IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 28th day of January, 2019.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge